**JAMES R. FROCCARO, JR.**
**Attorney at Law**
**20 Vanderventer Avenue, Suite 103W**
**Port Washington, NY 11050**
**telephone: (516) 944-5062**
**fax: (516) 944-5066**
**email:  JRFESQ61@aol.com**

July 3, 2020

BY ECF
Hon. Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:  United States v. Lee D'Avanzo
20 Cr 59 (RPK)

Dear Judge Kovner:

This letter is respectfully submitted on behalf of defendant Lee D'Avanzo in anticipation of his sentencing before Your Honor at 10:30 a.m. on July 17, 2020.

On March 23, 2020, Mr. D'Avanzo pled guilty before Your Honor, pursuant to a written Plea Agreement with the government, to being a convicted felon in possession of a firearm.  The parties estimate of the advisory U.S. Sentencing Guidelines was a Total Offense Level of 17.  This level carries a range of imprisonment of 37 to 46 months, assuming that the defendant falls within Criminal History Category IV.  The Plea Agreement also provided that the government would take no position where within the applicable range Mr. D'Avanzo's sentence should fall.

1

The parties' calculation under the advisory Guidelines was as follows:  a base offense level of 20 under Section 2K2.1(a)(4)(B)(i)(I),[1] minus 3 levels for acceptance of responsibility under Section 3E1.1 - resulting in the Total Offense Level of 17.

There is a discrepancy between the parties' estimate of the Guidelines in the Plea Agreement and the Probation Department's estimate in the Presentence Investigation Report ("PSR").  According to the PSR, Section 2K2.1(a)(2) provides a base level of 24, because the defendant committed the instant offense subsequent to sustaining two felony convictions of either a crime of violence or a controlled substance offense.  See PSR at paragraph 12.  The predicate offenses used by Probation for this conclusion are (1) Mr. D'Avanzo's prior conviction before Judge Raggi on March 9, 2001, of conspiracy to distribute marijuana, and (2) his prior conviction before Judge Korman on March 7, 2003, of racketeering which was based, in part, upon the same conduct as his conviction before Judge Raggi.  See PSR at paragraphs 12, and 27-28.

While the Probation Department's calculation is technically correct, this is due solely to a change in the way criminal history is calculated under the Guidelines that occurred *long after* Mr. D'Avanzo was sentenced for these prior crimes. This is neither just nor fair.  Application Note 10 to the Commentary to Section 2K2.1 provides that for purposes of applying subsection (a)(2), only those prior felony convictions that receive criminal history points under Section 4A1.1(a), (b) or (c) can be used as a predicate felony conviction under this Guideline.

---

[1] It was the parties' understanding that Mr. D'Avanzo's base offense level could also be 20 under Section 2K2.1(a)(4)(A), because the defendant committed the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense.

When Mr. D'Avanzo was sentenced by Judge Korman for racketeering in March of 2003, his conviction for a controlled substance offense before Judge Raggi *did not receive any criminal history points under Section 4A1.1(a), (b) or (c)*.  Attached hereto as Exhibit A is a copy of the relevant portion of the PSR in that case. The prior controlled substance conviction was not counted because it was for conduct that was part of and related to the racketeering charge which Mr. D'Avanzo pled guilty to before Judge Korman.  Significantly, Section 4A1.2(a) of the 2001 Guidelines Manual provided that "prior sentences in related cases were to be treated as one sentence for purposes of Section 4A1.1(a),(b), and (c)," except "if they were for offenses that were separated by an intervening arrest, (i.e., the defendant is arrested for the first offense prior to committing the second offense)."  Notably, there was no intervening arrest of Mr. D'Avanzo.  The government simply chose to bring separate or multiple prosecutions against him based upon the same conduct.

Years later, however, the definitions and instructions for computing Criminal History under the Guidelines were changed by the Sentencing Commission.  Section 4A1.2(a)(2) now provides that prior sentences can only be counted as a single sentence if there is no intervening arrest and "the sentences resulted from offenses contained in the same charging instrument, or the sentences were imposed on the same day." Mr. D'Avanzo is now considered to have two prior felony convictions of either a crime of violence or a controlled substance offense under Section 4A1.1, rather than just one.  Thus, due to a change in the Guidelines promulgated long after Mr. D'Avanzo was sentenced for these prior offenses, his criminal history category *for these same prior convictions* is now calculated differently.

3

I have been practicing criminal law in the federal courts since 1987 - the year that the Guidelines first came into effect.  This is only the second time that I have been confronted with this sort of issue.  The first time was in a pre-Booker case presided over by then U.S. District Court Judge Reena Raggi in this District.  The caption of that case was <u>United States v. Dominick Dionisio,</u> 01 Cr 56.

Mr. Dionisio had first been sentenced for a RICO violation consisting of predicate acts involving securities fraud in the Eastern District on September 19, 2000.  The caption of that case, which was presided over by the Hon. Nina Gershon, was <u>United States v. Dominick Dionisio,</u> 99 Cr 589.  On January 17, 2000, Mr. Dionisio was arrested again in the Eastern District and charged this time with RICO conspiracy before Judge Raggi, including predicate acts involving the same securities fraud that he had been sentenced for before under the Guidelines by Judge Gershon.  Mr. Dionisio ultimately pled guilty to this RICO conspiracy charge and was sentenced by Judge Raggi for this offense on June 4, 2002.  A contested issue between the parties at sentencing was whether Mr. Dionisio should receive a 2-level enhancement for using "sophisticated means" in connection with the securities fraud conduct due to an amendment to the Guidelines that came into effect *after* he was sentenced for this same conduct by Judge Gershon.  <u>Notably, Judge Raggi refused to apply this enhancement</u>.  Judge Raggi's logic and reasoning in refusing to apply the new sophisticated means enhancement under the then-mandatory Guidelines, was as follows:

> THE COURT:  Here I'm concerned about justice not only being fair but appearing fair.  It seems to me that it is the most technical application of the Guidelines understood by all of us lawyers that results in this difference here.  How a defendant or his family could understand that [he] would be in front of one judge and have one calculation apply and another judge and have another calculation apply seems to me to start to undermine confidence in the Guidelines.

See relevant portion of transcript of sentencing proceedings in United States v. Dionisio, 01 Cr 56 (RR) attached hereto as Exhibit B.  Judge Raggi concluded that it would be unjust and unfair for an intervening amendment to increase the way a defendant's Guidelines had been calculated by the Court before.[2]  Likewise, it would be unjust and unfair for an intervening amendment to have one calculation of Mr. D'Avanzo's criminal history apply before Judge Korman - and another calculation apply before Your Honor - *for the same prior criminal convictions*.

I have discussed this inequity with the government.  It is my understanding that the government will ask this Court to honor the terms of the parties' Plea Agreement in this case and sentence Mr. D'Avanzo within the 37 to 46 month prison range.

As Your Honor is no doubt well aware, the Guidelines are no longer mandatory and but one factor for the Court to consider in formulating a sentence that is "sufficient but not greater than necessary."  Consistent with the parties' Plea Agreement, I am most respectfully asking Your Honor to sentence Mr. D'Avanzo to a 37 month term of incarceration in the case.

Mr. D'Avanzo pled guilty early on in these proceedings, sparing both the government's and Court's valuable resources.  He has taken full and very timely responsibility for his conduct.  Notably, while the charged offense is serious, there is no allegation that Mr. D'Avanzo used or possessed the firearms at issue in connection with another offense.  See PSR at paragraph 8.

---

[2] The intervening amendment in this case affects more than the base offense level determination.  In addition, the change in the manner in which Mr. D'Avanzo's prior criminal history is now being computed has also increased his criminal history point total for the same prior convictions from 6 points to 9 points or Criminal History Category III to IV.  The advisory prison range for a Total Offense Level of 17 and a Criminal History Category III - is 30-37 months.

Mr. D'Avanzo also possesses redeeming qualities.  By all accounts, he is a loving and devoted  family man and father to his two daughters, ages 19 and 12.  As set forth in the PSR, Mr. D'Avanzo also shares a good marriage with his wife.  <u>See</u> PSR at paragraph 40. Attached hereto collectively as Exhibit C are letters from, among others, Mr. D'Avanzo's daughters, seeking leniency on their father's behalf.

Finally, another factor for Your Honor to consider, is the conditions of Mr. D'Avanzo's pre-trial confinement.  Mr. D'Avanzo, who suffers from asthma, has been in custody at the MDC since mid-January.  Since the pandemic began, the conditions at the MDC have bordered on the inhumane. Mr. D'Avanzo has, for the most part, been on continuous lock-down in his cell - with one hour to shower and reach out to his loved ones - every 48 hours.

Based upon all of these factors , I respectfully submit that a sentence of 37 months - a more than 3 year prison term - is sufficient but not greater than necessary here.

Respectfully submitted,

/JRF/

James R. Froccaro, Jr.

JRF:pa
Encls.

6

Exhibit A

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | PRESENTENCE INVESTIGATION REPORT |
| | ) | |
| LEE D'AVANZO | ) | DOCKET NO. 01-CR-1336(S-1)-01 |

| | |
|---|---|
| **Prepared for:** | The Honorable Edward R. Korman<br>Chief United States District Judge |
| **Prepared by:** | Sindee J. Haasnoot<br>United States Probation Officer |

**Assistant U.S. Attorney**
Greg D. Andres, Esq.

**Defense Counsel** (Retained)
James R. Froccaro, Jr., Esq.
7 Old Shore Road
Port Washington, New York 11050
(516) 944-5062

| | |
|---|---|
| **Sentence Date:** | February 21, 2003 @ 11:00 a.m. |
| **Offense:** | Count One: 18 U.S.C. § 1962(d), RACKETEERING CONSPIRACY, a Class C felony. |
| | Count Two: 18 U.S.C. § 1956(h), MONEY LAUNDERING CONSPIRACY, a Class C felony. |
| **Arrest Date:** | December 6, 2001 |
| **Release Status:** | In custody since arrest. |
| **Detainers:** | None. |
| **Other Defendants:** | See Page Two. |
| **Date Report Prepared:** | December 27, 2002 |

```
ADDENDUM:  YES
Date:  February 28, 2003
```

31

was then placed under arrest and a search for the defendant and Costanzo ensued. Officers located and arrested both. The total damage reported by Hudson United Bank was $11,568.99.

155. The defendant was placed on probation with the local probation department on Staten Island, New York. On October 16, 2000, he violated the terms of his probation. The violation of probation report reflects that the defendant was pulled over on February 10, 1999, in Lincoln, Nebraska, having left New Jersey for more than 24 hours without permission. Additionally, the defendant failed to pay full restitution (as of August 25, 2000, he had only paid $2,250). As a result, the defendant's term of probation was extended by one year and expired on April 20, 2001.

| 156. | 8/30/00<br>(Age 31) | Conspiracy to<br>Distribute and Possess<br>With Intent to<br>Distribute Marijuana/<br>U.S. District Court<br>Brooklyn, NY<br>(Raggi, J.)<br>Dkt.# 00-CR-903-02 | 3/9/01 | 60 months custody;<br>5 years supervised<br>release | 4A1.2(a)<br><br><br><br><br>0 |

157. The above-noted disposition was verified by a Judgment and Commitment Order. The presentence report reveals that the defendant, along with Beckim Fiseku, Neat Bilali, Daniel Costanzo, Joseph Gambino, and Flamur Fiseku (all co-defendant's in the instant offense), pooled their financial resources to purchase bulk quantities of marijuana from Afrim Kupa and Lulzim Kupa. The marijuana purchased by the group was to be re-distributed in New York. The dollar amount contributed by each defendant toward the purchase of the marijuana is not known. The only defendant who did not have a proprietary interest in the marijuana was Flamur Fiseku, who was hired by the group to transport the marijuana from Arizona to New York City. He rented recreational vehicles and decoy cars (used to interfere with local law enforcement in the event that the vehicle carrying the marijuana was stopped on the interstate highway) for the transportation of the marijuana. At various times, each participant took turns driving the vehicles during the smuggling trips. The group paid the Kupa brothers an average of $650 per pound of marijuana and made a total of two purchases in 1999 (totaling 249.6 kilograms of marijuana).

158. The defendant's actions in this conspiracy were part of a common scheme or plan (Guideline 1B1.3), and falls within the time frame specified by the criminal information to which he pled guilty. As such, this conviction is not assigned any criminal history points and the amount of drugs that the defendant is responsible for has been included in the guideline calculations for the instant offense.

Exhibit B

```
                                                                    1

 1    UNITED STATES DISTRICT COURT
      EASTERN DISTRICT OF NEW YORK
 2    ----------------------------------------x
      UNITED STATES OF AMERICA,
 3                    Plaintiff,

                                              01 CR 56
 4

 5           versus          United States Courhouse
                             225 Cadman Plaza East
 6    DOMINICK DIONISIO,     Brooklyn, N.Y.  11201

 7                    DEFENDANT.

 8
      ----------------------------------------x
 9
                                  June 4,  2002
10                                9:40 a.m.
           TRANSCRIPT OF SENTENCE
11    Before:  HON. REENA RAGGI,
                                 DISTRICT COURT JUDGE
12
                          APPEARANCES
13
      ALAN VINEGRAD
14        United States Attorney - Eastern District of New York
      One Pierrepont Plaza
15    Brooklyn, New York  11201
      BY:  AMY WALSH, ESQ.
16    Assistant United States Attorney

17    ATTORNEY FOR DEFENDANT:

18    JAMES FROCCARO, ESQ.

19

20

21

22    Court Reporter:  ALLAN R. SHERMAN, CSR, RPR
                        225 Cadman Plaza East Rm 374
23                      Brooklyn, New York  11201
                        Tel: (718) 260-2529  Fax: (718) 254-7237
24

25    Proceedings recorded by mechanical stenography, transcription
      by CAT.
```

3

Sentence

1       Let me state where I understand we are now and then

2   you'll tell me what still may be a concern.  Some of this is

3   fact and some of it is guideline calculation.

4       I gather the government and probation are now

5   prepared to accept your view of how the drug quantity should

6   be calculated?

7       MR. FROCCARO:  That's correct.

8       THE COURT:  So that would mean that it would be a

9   level 26 with respect to the drugs.

10      MR. FROCCARO:  That's correct, your Honor.

11      MS. WALSH:  That's correct.

12      THE COURT:  There is still a question about the

13  enhancement for the use of sophisticated means in the stock

14  fraud that.  Is still a dispute between the parties.

15      MR. FROCCARO:  Yes.

16      THE COURT:  I'm going to move over and come back to

17  its resolution.  Then there is the question about whether or

18  not the monies used in the money laundering should have the

19  enhancement of narcotics proceeds and here the government and

20  probation department have --

21      MR. FROCCARO:  There is no dispute.

22      MS. WALSH:  I think there is no dispute as to that.

23      THE COURT:  So that would not take place.

24      There is a question about the amount of credit Mr.

25  Dionisio is entitled to for acceptance of responsibilities.

ALLAN R. SHERMAN, CSR, RPR   Official Court Reporter
United States District Court   Eastern District of New York

9

                            Sentence

1    complex factual circumstances relating to the negotiation of

2    this plea.  The Court was aware just tangentially from the

3    various status conferences that there were very active

4    discussions about pleas among the parties.

5              The Court plays no role in that, of course, but I

6    cannot say without a hearing that Mr. Dionisio was not

7    prepared to accept responsibility and that the problem was the

8    position of his codefendants rather than he himself.

9              I don't think this is worth an issue to the Court of

10   Appeals so I'm going to give him the additional point.  So

11   that will be resolved in his favor.

12             If we can just keep going.  There is this question

13   about sophisticated means being employed.

14             Mr. Froccaro, I have your position and the

15   government's, is there anything more you want to add here?

16             MR. FROCCARO:  No.

17             THE COURT:  Ms. Walsh, is there anything more you

18   want to add on this?

19             MS. WALSH:  No, your Honor.

20             THE COURT:  Here I'm concerned about justice not

21   only being fair but appearing fair.  It seems to me that it is

22   the most technical application of the guidelines understood by

23   all of us as lawyers that results in this difference here but

24   how a defendant or his family could understand that would be

25   in front of one judge and have one calculation apply and

           ALLAN R. SHERMAN, CSR, RPR   Official Court Reporter
           United States District Court   Eastern District of New York

10

                              Sentence

1   another judge and have another calculation apply seems to me

2   to start to undermine confidence in the guidelines.

3          So I'm going to give Mr. Dionisio the benefit here.

4   Again, if the whole case had been consolidated before me and I

5   had been able to deal with in at one time, I'm not sure this

6   would be the outcome but Mr. Dionisio is going to face a

7   difficult sentence in any event and I don't want there to be

8   this issue about whether he got a point here or a point there,

9   so I'm not going to do this two-point enhancement.

10         Is there anything else with respect to facts or

11  guideline calculations?  I know we have to get into concurrent

12  sentence's.

13         MR. FROCCARO:  Just the global point.

14         THE COURT:  That is a departure, so let's put that

15  aside for a moment.

16         MR. FROCCARO:  There is nothing else.

17         THE COURT:  Let's calculate the guideline, then

18  we'll talk about departures, concurrency.

19         MR. FROCCARO:  I think I did the calculation right

20  in my original estimation.

21         THE COURT:  I think so, Mr. Froccaro.  So if you

22  would bear with me for a moment.  I think this means Mr.

23  Dionisio is at a level 30.

24         MR. FROCCARO:  That's correct.

25         THE COURT:  With a criminal history category of one,

                 ALLAN R. SHERMAN, CSR, RPR  Official Court Reporter
           United States District Court  Eastern District of New York

Exhibit C

Dear Judge,

My father has always been very good to me. He has always been there when I needed advice or help with something. He has always supported me in whatever I wanted to do in life with school, sports, or activities. He always gave me and my sister anything we needed or wanted. He is such a great father. He also took us out to eat, the mall to take us shopping and just to spend time with us. I miss him being home more then anything.

thank you,

Dear Judge,

my dad is a good dad. I miss my dad very much and I hope he comes home soon. I love him so much.

thank you,
gizelle davanzo

July 1st 2020

To: The Honorable Judge Rachel P. Kovner,


My name is Neil J. Castellano Jr. and I am the Managing Director of Conover Futures Group LLC a commodity trading firm. I have known Lee D'avanzo since our early childhood. Lee has always been a good person, solid friend and family man. Lee was always known in the neighborhood as someone you can turn to, trust, and rely on. With our friendship, he has always been there for me, my family, and even friends of mine if they needed help with something as small as moving.

It is my sincere hope that the court takes into consideration this letter. I strongly believe that Lee is sorry for what has transpired and for the impact it has on his family.


Regards,

Neil J Castellano Jr.